# Exhibit 2

# RESTRICTED STOCK AWARD AGREEMENT

| | |
|---|---|
| Theodore Dilenschneider | (the "**Grantee**") |
| 5,000 shares of Common Stock<br>2,500 shares of Series A-2 Preferred Stock | (the "**Company Stock**") |
| May 9, 2019 | (the "**Grant Date**") |

ENERGY EXPLORATION TECHNOLOGIES INC., a Puerto Rico corporation (the "**Company**") has adopted the Energy Exploration Technologies, Inc. Special Equity Incentive Plan (the "**Plan**") pursuant to which awards of Company Stock (as hereinafter defined) may be granted. The Company and the Grantee have entered into that certain Consulting Agreement dated April 15, 2019 (the "**Services Agreement**") pursuant to which the Company agreed to grant the award of Company Stock provided for herein. The Committee has determined that it is in the best interests of the Company and its stockholders to grant the award of Company Stock provided for herein to the Grantee.

**NOW, THEREFORE**, the parties hereto, intending to be legally bound, hereby enter into this Restricted Stock Award Agreement (this "**Agreement**") and agree as follows:

1. Grant of Restricted Stock. Pursuant to Section 5.1 of the Plan, the Company hereby issues to the Grantee on the Grant Date an Award of Restricted Stock consisting of **five thousand (5,000)** shares of the Common Stock, and **two thousand five hundred (2,500)** shares of Preferred Stock (collectively, the **"Company Stock"**), on the terms and conditions and subject to the restrictions set forth in this Agreement and the Plan. Capitalized terms that are used but not defined herein have the meaning ascribed to them in the Plan.

2. Consideration. The grant of the Company Stock is made in consideration of the services to be rendered by the Grantee to the Company.

3. Vesting; Total Vesting Period.

3.1 Except as otherwise provided herein, provided that the Grantee remains in Continuous Service through the applicable vesting date, the Company Stock will vest in accordance with the following schedule:

| **Vesting Date** | **Shares of Company Stock** |
|---|---|
| Six months after the Grant Date | 12.5% of the Company Stock |
| Twelve months after the Grant Date | 12.5% of the Company Stock |
| Eighteen months after the Grant Date | 12.5% of the Company Stock |
| Twenty Four months after the Grant Date | 12.5% of the Company Stock |
| Thirty months after the Grant Date | 12.5% of the Company Stock |



TE

| | |
|---|---|
| Thirty Six months after the Grant Date | 12.5% of the Company Stock |
| Forty Two months after the Grant Date | 12.5% of the Company Stock |
| Forty Eight months after the Grant Date | 12.5% of the Company Stock |

The period over which the Company Stock vests is referred to as the "**Total Vesting Period**".

Succeeding installments after the installment which vests on the Grant Date shall be granted on the first day of the month, after the indicated number of full months have elapsed. The term "after" refers to the number of months after the Grant Date, not including the prorated month within which the Grant Date may fall. There shall be no proportionate or partial vesting in the periods prior to each vesting date set forth above and all vesting shall occur only on the applicable vesting date.

Notwithstanding anything to the contrary, upon termination of Continuous Service, all unvested Company Stock shall be immediately forfeited.

3.2 The foregoing vesting schedule notwithstanding, (a) if the Grantee's Continuous Service terminates for any reason at any time before all of his Company Stock has vested, the Grantee's unvested Company Stock shall be automatically forfeited upon such termination of Continuous Service and neither the Company nor any Affiliate shall have any further obligations to the Grantee under this Agreement; and (b) provided that the Grantee's Continuous Service has not terminated prior to the occurrence of a Change of Control, upon the occurrence of a Change in Control, 100% of the unvested Company Stock shall vest as of the date of the Change in Control.

4. Restrictions on Transfer. Subject to any exceptions set forth in this Agreement or the Plan, during the Total Vesting Period, the Company Stock or the rights relating thereto may not be assigned, alienated, pledged, attached, sold or otherwise transferred or encumbered by the Grantee. Any attempt to assign, alienate, pledge, attach, sell or otherwise transfer or encumber the Company Stock or the rights relating thereto during the Total Vesting Period shall be null and void and wholly ineffective. After the Total Vesting Period, the Company Stock or the rights relating thereto may not be assigned, alienated, pledged, attached, sold or otherwise transferred or encumbered by the Grantee except to the extent permitted by and in compliance with the Bylaws of the Company and any applicable Stockholder Agreements.

5. Rights as Stockholder; Dividends.

5.1 The Grantee shall be the record owner of the Company Stock until the shares of Company Stock are sold or otherwise disposed of, and shall be entitled to all of the rights of a stockholder of the Company including, without limitation, the right to vote such shares and receive all dividends or other distributions paid with respect to such shares. Notwithstanding the foregoing, any dividends or other distributions shall be subject to the same restrictions on transferability as the shares of Company Stock with respect to which they were paid.

5.2 The Company may issue stock certificates or evidence the Grantee's interest by using a restricted book entry account with the Company's transfer agent. Physical possession or



TE

custody of any stock certificates that are issued shall be retained by the Company until such time as the Company Stock vests.

5.3 If the Grantee forfeits any rights he has under this Agreement in accordance with Section 3, the Grantee shall, on the date of such forfeiture, no longer have any rights as a stockholder with respect to the Company Stock and shall no longer be entitled to vote or receive dividends on such shares.

5.4 The Grantee acknowledges and agrees that under the Organic Documents certain other stockholders of the Company have and/or may in the future have rights, privileges and preferences, including liquidation preferences, which are senior to the Company Stock. Accordingly, the parties agree that the Company Stock has no value on the Grant Date. All such Company Stock shall be subject to the transferability restrictions and the forfeiture provisions contained in this Agreement and the Plan and are further subject to the transferability restrictions contained in Organic Documents and any employment agreement, consulting agreement or similar agreement presently existing or hereinafter entered into between the Grantee and the Company .

6. No Right to Continued Service. Neither the Plan nor this Agreement shall confer upon the Grantee any right to be retained in any position, as an employee, consultant or director of the Company. Further, nothing in the Plan or this Agreement shall be construed to limit the discretion of the Company to terminate the Grantee's Continuous Service at any time, with or without Cause.

7. Adjustments. If any change is made to the outstanding capital stock or capital structure of the Company, if required, the shares of Company Stock shall be adjusted or terminated in any manner as contemplated by Section 9 of the Plan.

8. Tax Liability and Withholding.

8.1 The Grantee shall be required to pay to the Company, and the Company shall have the right to deduct from any compensation paid to the Grantee pursuant to the Plan, the amount of any required withholding taxes in respect of the Company Stock and to take all such other action as the Committee deems necessary to satisfy all obligations for the payment of such withholding taxes. The Committee may permit the Grantee to satisfy any federal, state or local tax withholding obligation by any of the following means, or by a combination of such means:

(a) tendering a cash payment.

(b) authorizing the Company to withhold shares of Common Stock from the shares of Common Stock otherwise issuable or deliverable to the Grantee as a result of the vesting of the Company Stock; *provided*, *however*, that no shares of Common Stock shall be withheld with a value exceeding the minimum amount of tax required to be withheld by law.

(c) delivering to the Company previously owned and unencumbered shares of Common Stock.



TE

8.2 Notwithstanding any action the Company takes with respect to any or all income tax, social insurance, payroll tax, or other tax-related withholding (“**Tax-Related Items**”), the ultimate liability for all Tax-Related Items is and remains the Grantee’s responsibility and the Company (a) makes no representation or undertakings regarding the treatment of any Tax-Related Items in connection with the grant or vesting of the Company Stock or the subsequent sale of any shares; and (b) does not commit to structure the Company Stock to reduce or eliminate the Grantee’s liability for Tax-Related Items.

9. Section 83(b) Election. The Grantee may make an election under Code Section 83(b) in the form of Exhibit “A” attached hereto (a “**Section 83(b) Election**”) with respect to the Company Stock. Any such election must be made within thirty (30) days after the Grant Date. If the Grantee elects to make a Section 83(b) Election, the Grantee shall provide the Company with a copy of an executed version and satisfactory evidence of the filing of the executed Section 83(b) Election with the US Internal Revenue Service. The Grantee agrees to assume full responsibility for ensuring that the Section 83(b) Election is actually and timely filed with the US Internal Revenue Service and for all tax consequences resulting from the Section 83(b) Election.

10. Repurchase Option.

10.1 Generally. In the event of the Grantee’s Continuous Service is terminated for Cause or in the event the Grantee engages in a Detrimental Activity during Continuous Service or during the one (1) year period thereafter (or such shorter period of restriction set forth in the agreement prohibiting the Detrimental Activity), the Company shall have the option to purchase all, but not less than all, of the Restricted Stock for a purchase price equal to the par value per share times the number of shares of Company Stock.

10.2 Exercise of Repurchase Option. The Company may exercise its right to purchase the Company Stock (the **“Repurchase Option”**) by giving to the Grantee written notice of exercise within one year (1) year after the effective date of termination of Continuous Service or, in the case of a repurchase by reason of the Grantee engaging in the Detrimental Activity, within one (1) year after the senior executives of the Company acquire actual knowledge of the Grantee engaging in such activity (such period, the **“Repurchase Option Period”**). If and to the extent that the Repurchase Option is not exercised within the Repurchase Option Period, the Repurchase Option will automatically expire and terminate. The Company may designate one or more of its stockholders to purchase the Repurchased Stock in lieu of the Company.

10.3 Closing. The closing of any purchase under the Repurchase Option (the **“Closing”**) shall be held within ninety (90) days after the exercise of the Repurchase Option Period; provided, however, that the parties may hold the Closing on such other date as they shall mutually agree. At the Closing, the Grantee shall: (i) represent and warrant that he or she is the sole owner(s) of the repurchased Company Stock, that such Company Stock is held free and clear of any and all pledges, claims, liens and rights of others (other than the effect of the Organic Documents, the Plan and this Agreement ) and that he or she has the full power, right and authority to consummate the transaction; (ii) unless the Participant has already done so, resign from all offices held with the Company and/or any of its Affiliates; and (iii) deliver to the Company (or the designated purchaser) the shares of Company Stock so sold, together with all other documents and instruments

necessary to transfer such shares of Company Stock. The purchase price for the Restricted Shares shall be paid, in immediately available funds, at the Closing.

11. Drag Along Rights.

11.1 Generally. In the event the stockholders of the Company holding a majority of the outstanding shares of capital stock of the Company on a fully diluted basis (the "**Controlling Stockholders**") desire to enter into a transaction which constitutes a Deemed Liquidation Event or Change of Control (as such terms are defined in the Organic Documents) pursuant to which the Controlling Stockholders will sell or transfer their shares of capital stock of the Company to a bona fide third party purchaser (a "**Stock Sale Transaction**"), the Controlling Stockholder may, in their sole discretion, require the Grantee to participate in such Stock Sale Transaction on the terms and conditions of this Section 11 by transferring a pro-rata portion of each series of the shares of Company Stock held by the Grantee which have vested or will vest upon consummation of such Stock Sale Transaction equal to a fraction, the numerator of which is the total number of shares of capital stock of the Company to be sold by the Controlling Stockholders to the third party purchaser and the denominator of which is the total number of shares of capital stock of the Company owned by the Controlling Stockholders. The Controlling Stockholders are express third party beneficiaries of this Section 11, provided, however, it is understood and agreed that the Company, after obtaining the approvals set forth in the Organic Documents required to approve the Stock Sale Transaction, may waive the Grantee's obligation to comply with this Section 11.

11.2 Exercise of Drag-Along Rights. The Controlling Stockholders shall exercise such option by giving written notice to the Grantee at least twenty (20) days prior to the date on which the Controlling Stockholders desire to consummate the Stock Sale Transaction setting forth the name and address of the purchaser, the purchaser's relationship with the Controlling Stockholders, if any, and the terms and conditions of the offer, including the number of shares or percentage of capital stock to be sold to the purchaser. Notwithstanding anything to the contrary, the provisions of this Section 11 shall not apply to any shares of Company Stock that are unvested and will continue to be unvested upon consummation of the Stock Sale Transaction.

11.3 Participation in Stock Sale Transaction. If the Controlling Stockholders exercise their option under this Section 11, the Grantee shall participate in the Stock Sale Transaction by selling a pro-rata portion of each series of the Company Stock held by the Grantee on the same terms and conditions (other than purchase price, which shall be determined in accordance with distribution upon liquidation provisions set forth in the Organic Documents of the Company) upon which the Controlling Stockholders are selling their shares of capital stock. Without limiting the generality of the foregoing, the Grantee shall make the same representations and warranties and agree to the same indemnification obligations as the Controlling Stockholders; provided, however, that any representations and warranties relating to the Grantee or shares of Company Stock to be sold shall only be made by the Grantee and any indemnification provided by the Grantee with respect thereto shall be by the Grantee severally and not jointly with other selling stockholders or solely with recourse to an escrow established for the benefit of the purchaser.

11.4 Purchase Price. The purchase price paid by the purchaser for the shares of capital stock to be sold in the Stock Sale Transaction contemplated by this Section 11, shall be allocated among the selling stockholders (including the Controlling Stockholders and the Grantee) in the



TE

same relative proportion as such selling stockholders would receive in accordance with distribution upon liquidation provisions set forth in the Organic Documents of the Company, with the consideration paid in such Stock Sale Transaction being based upon a sale of all of the assets of the Company at the fair market value of the Company implied by the bona fide offer by the purchaser (as determined in good faith by the Controlling Stockholders), if the amount of the purchase price paid by the purchaser was distributed to the selling stockholders with respect to their respective shares of capital stock included in the Stock Sale Transaction. The Grantee acknowledges and agrees that the amount of purchase price to which the Grantee is entitled from the consummation of a Stock Sale Transaction contemplated by Section 11 shall be determined in accordance with the preceding sentence. In the absence of a showing of bad faith or manifest error, all determinations hereunder by the Controlling Stockholders with respect to the determination of the purchase price allocated among the selling stockholders shall be binding and conclusive on the Grantee.

11.5 Further Action. The Grantee shall take all necessary and desirable actions in connection with the consummation of the Stock Sale Transaction contemplated by Section 11, which shall include, without limitation, (i) voting in favor of such transaction, (ii) waiving any appraisal or similar rights with respect to such transaction, and (iii) executing and delivering any agreements, documents and instruments reasonably necessary in connection with such transaction.

11.6 Expenses. The Grantee shall bear his pro rata share of the costs of the Stock Sale Transaction pursuant to this Section 11 (based on the pro rata share of the net proceeds to be received by the Grantee) to the extent such costs are incurred for the benefit of all selling stockholders and are not paid by the purchaser or the Company.

12. Compliance with Law. The issuance and transfer of shares of Company Stock shall be subject to compliance by the Company and the Grantee with all applicable requirements of federal and state securities laws and with all applicable requirements of any stock exchange on which the Company's shares of Common Stock may be listed. No shares of Company Stock shall be issued or transferred unless and until any then applicable requirements of state and federal laws and regulatory agencies have been fully complied with to the satisfaction of the Company and its counsel. The Grantee understands that the Company is under no obligation to register the shares of Common Stock with the Securities and Exchange Commission, any state securities commission or any stock exchange to effect such compliance.

13. Legends. A legend may be placed on any certificate(s) or other document(s) delivered to the Grantee indicating restrictions on transferability of the shares of Company Stock pursuant to this Agreement or any other restrictions that the Committee may deem advisable under the rules, regulations and other requirements of the Securities and Exchange Commission, any applicable federal or state securities laws or any stock exchange on which the shares of Common Stock are then listed or quoted.

14. Notices. Any notice required to be delivered to the Company under this Agreement shall be in writing and addressed to the Chief Executive Officer of the Company at the Company's principal corporate offices. Any notice required to be delivered to the Grantee under this Agreement shall be in writing and addressed to the Grantee at the Grantee's address as shown in the records of the Company. Either party may designate another address in writing (or by such



TE

other method approved by the Company) from time to time. The Grantee hereby consents and agrees that any and all notices and other communications from the Company may be delivered to the Grantee electronically (including email or facsimile).

15. Governing Law. This Agreement will be construed and interpreted in accordance with the laws of the Commonwealth of Puerto Rico without regard to conflict of law principles.

16. Interpretation. Any dispute regarding the interpretation of this Agreement shall be submitted by the Grantee or the Company to the Committee for review. The resolution of such dispute by the Committee shall be final and binding on the Grantee and the Company.

17. Company Stock Subject to Plan. This Agreement is subject to the Plan as approved by the Company's stockholders. The terms and provisions of the Plan as it may be amended from time to time are hereby incorporated herein by reference. In the event of a conflict between any term or provision contained herein and a term or provision of the Plan, the applicable terms and provisions of the Plan will govern and prevail.

18. Waiver of Statutory Information Rights. Grantee acknowledges and understands that, but for the waiver made herein, Grantee would be entitled, upon written demand under oath stating the purpose thereof, to inspect for any proper purpose, and to make copies and extracts from, the Company's stock ledger, a list of its stockholders, and its other books and records, and the books and records of subsidiaries of the Company, if any, under the circumstances and in the manner provided in Section 3650 of the Puerto Rico General Corporations Act (any and all such rights, and any and all such other rights of the Grantee as may be provided for in Section 3650 (the "**Inspection Rights**"). In light of the foregoing, until the first sale of Common Stock of the Company to the general public pursuant to a registration statement filed with and declared effective by the Securities and Exchange Commission under the Securities Act of 1933, as amended, the Grantee hereby unconditionally and irrevocably waives the Inspection Rights, whether such Inspection Rights would be exercised or pursued directly or indirectly pursuant to Section 3650 or otherwise, and covenants and agrees never to directly or indirectly commence, voluntarily aid in any way, prosecute, assign, transfer, or cause to be commenced any claim, action, cause of action, or other proceeding to pursue or exercise the Inspection Rights. The foregoing waiver applies to the Inspection Rights of the Grantee in Grantee's capacity as a stockholder and shall not affect any rights of a director, in his or her capacity as such, under Section 3650. The foregoing waiver shall not apply to any contractual inspection rights of Grantee under any written agreement with the Company.

19. Successors and Assigns. The Company may assign any of its rights under this Agreement. This Agreement will be binding upon and inure to the benefit of the successors and assigns of the Company. Subject to the restrictions on transfer set forth herein, this Agreement will be binding upon the Grantee and the Grantee's beneficiaries, executors, administrators and the person(s) to whom the Company Stock may be transferred by will or the laws of descent or distribution.

20. Severability. The invalidity or unenforceability of any provision of the Plan or this Agreement shall not affect the validity or enforceability of any other provision of the Plan or this



TE

Agreement, and each provision of the Plan and this Agreement shall be severable and enforceable to the extent permitted by law.

21. Discretionary Nature of Plan. The Plan is discretionary and may be amended, cancelled or terminated by the Company at any time, in its discretion. The grant of the Company Stock in this Agreement does not create any contractual right or other right to receive any Company Stock or other equity awards in the future. Future Awards, if any, will be at the sole discretion of the Company. Any amendment, modification, or termination of the Plan shall not constitute a change or impairment of the terms and conditions of the Grantee's employment with the Company.

22. Amendment. The Committee has the right to amend, alter, suspend, discontinue or cancel the Restricted Stock, prospectively or retroactively; provided, that, no such amendment shall adversely affect the Grantee's material rights under this Agreement without the Grantee's consent.

23. No Impact on Other Benefits. The value of the Grantee's Company Stock is not part of his normal or expected compensation for purposes of calculating any severance, retirement, welfare, insurance or similar employee benefit.

24. Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument. Counterpart signature pages to this Agreement transmitted by facsimile transmission, by electronic mail in portable document format (.pdf), or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, will have the same effect as physical delivery of the paper document bearing an original signature.

25. Stockholder Agreements. As of the Grant Date, the Shares are not subject to any Stockholder Agreement (as defined in the Plan). In connection with a future offering of securities or otherwise, the Grantee agrees to become a party to, and to execute and deliver to the Company promptly following request, any Stockholder Agreements reasonably requested by the Company. Without limiting the generality of the foregoing, the Grantee will agree to any reasonable drag-along provision set forth in such Stockholder Agreement which will replace the drag-along provision set forth in Section 11 hereof.

26. Acceptance. The Grantee hereby acknowledges receipt of a copy of the Plan and this Agreement. The Grantee has read and understands the terms and provisions thereof, and accepts the Company Stock subject to all of the terms and conditions of the Plan and this Agreement. The Grantee acknowledges that there may be adverse tax consequences upon the grant or vesting of the Company Stock or disposition of the underlying shares and that the Grantee has been advised to consult a tax advisor prior to such grant, vesting or disposition.

[SIGNATURE PAGE FOLLOWS]



TE

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

Company:

**ENERGY EXPLORATION TECHNOLOGIES, INC.**

By: ______________________________
Teague Egan
Chief Executive Officer

Grantee:

______________________________
**THEODORE DILENSCHNEIDER**

# EXHIBIT A

## ELECTION UNDER SECTION 83(b)
## OF THE U.S. INTERNAL REVENUE CODE OF 1986

# ELECTION UNDER SECTION 83(b)
# OF THE U.S. INTERNAL REVENUE CODE OF 1986

The undersigned taxpayer hereby elects, pursuant to Section 83(b) of the Internal Revenue Code of 1986, as amended, to include in taxpayer's gross income for the current taxable year the amount of any compensation taxable to taxpayer in connection with his or her receipt of the property described below:

1. The name, address, taxpayer identification number and taxable year of the undersigned are as follows:

Name: ______________________________
Spouse: ______________________________
Taxpayer I.D. No: ______________________________
Address: ______________________________
______________________________
Tax Year: ______________________________

2. The property with respect to which the election is made is described as follows (collectively, the "Shares"): **5,000** shares of restricted Common Stock, $0.00001 par value per share, and **2,500** shares of restricted Series A-2 Preferred Stock, $0.00001 par value per share, of **Energy Exploration Technologies, Inc.** (the "Company").

3. The date on which the property was transferred is May 9, 2019.

4. The property is subject to the following restrictions: The Shares are required to be returned to the Company in the event that the undersigned ceases to perform services for the Company through certain dates specified in the Award Agreement between me and the Company dated as of May 9, 2019. This right lapses with regard to a portion of the Shares based on my continued status as an employee, consultant, scientific advisor or director over time.

5. The fair market value at the time of transfer, determined without regard to any restriction other than a restriction which by its terms will never lapse, of such property is: $0.

6. The amount (if any) paid for such property is: none.

The undersigned has submitted a copy of this statement to the person for whom the services were performed in connection with the undersigned's receipt of the above-described property. The transferee of such property is the person performing the services in connection with the transfer of said property. The undersigned understands that the foregoing election may not be revoked except with the consent of the Commissioner.

Dated:______________________________ ______________________________

Signature of Taxpayer

The undersigned spouse of taxpayer joins in this election.

Dated:______________________________ ______________________________

Spouse of Taxpayer