# Exhibit 3

**SWM DRAFT**

**ENERGY EXPLORATION TECHNOLOGIES, INC.**

**SPECIAL EQUITY INCENTIVE PLAN**

1. Purpose; Eligibility.

    1. General Purpose. The name of this plan is the ENERGY EXPLORATION TECHNOLOGIES, INC. SPECIAL EQUITY INCENTIVE PLAN (the "**Plan**"). The purposes of the Plan are to enable Energy Exploration Technologies, Inc., a Puerto Rico corporation (the "**Company**"), to attract and retain its Chief Science Officer.

    2. Eligible Award Recipients; Available Awards. Only the Company's Chief Science Officer, Theodore Dilenschneider, is eligible to receive Awards under the Plan. The only Awards that may be granted under the Plan are Restricted Stock.

    3. Subject to Organic Documents. All Awards are subject to the terms and conditions of the Organic Documents. In the event of a conflict between any term or provision contained herein and a term or provision of the Organic Documents, the applicable terms and provisions of the Organic Documents will govern and prevail.

2. Definitions.

"**Affiliate**" means a corporation or other entity that, directly or through one or more intermediaries, controls, is controlled by or is under common control with, the Company.

"**Applicable Laws**" means the requirements related to or implicated by the administration of the Plan under applicable state corporate law, United States federal and state securities laws, the Code and the applicable laws of any foreign country or jurisdiction where Awards are granted under the Plan.

"**Award**" means any Award of Restricted Stock under the Plan.

"**Award Agreement**" means a written agreement evidencing the terms and conditions of an Award granted under the Plan. Each Award Agreement shall be subject to the terms and conditions of the Plan.

"**Board**" means the Board of Directors of the Company, as constituted at any time. [1]

"**Cause**" means, unless the applicable Award Agreement provides otherwise:

(a) If the Participant is a party to an employment or service agreement with the Company or a Subsidiary and such agreement provides for a definition of Cause, the definition contained therein; or

(b) If no such agreement exists, or if such agreement does not define Cause: (i) failure to perform such duties as are reasonably requested by the Board; (ii) material breach of any agreement with the Company or an Affiliate, breach of a Restrictive Covenant Agreement, or a material violation of the Company's or an Affiliate's code of conduct or other written policy; (iii) commission of, or plea of guilty or no contest to, a felony or a crime involving moral turpitude or the commission of any other act involving willful malfeasance or material fiduciary breach with respect to the Company or an Affiliate; (iv) use of illegal drugs or abuse of alcohol that materially impairs the Participant's ability to perform his or her duties to the Company or an Affiliate; or (v) gross negligence or willful misconduct with respect to the Company or an Affiliate.

"**Change in Control**" means any of the following events provided that such event constitutes a "change in control" within the meaning of Section 409A under the Code:

(a) The acquisition (whether by purchase, merger, consolidation, combination or other similar transaction) by any Person of beneficial ownership (within the meaning of Rule 13d-3 promulgated under the Exchange Act) of more than 50% (on a fully diluted basis) of the combined voting power of the then outstanding voting securities of the Company; *provided*, *however*, that for purposes of this Plan, the following acquisitions shall not constitute a Change in Control: (A) any acquisition by the Company

[1] NOTE: Removed concept of a Committee. This type of decision should be made by the board for your own protection.

or any Affiliate, (B) any acquisition by any employee benefit plan sponsored or maintained by the Company or any subsidiary, (C) in respect of an Award held by the Participant, any acquisition by the Participant or any group of persons including the Participant (or any entity controlled by the Participant or any group of persons including the Participant); or (D) the acquisition of securities pursuant to an offer made to the general public through a registration statement filed with the Securities and Exchange Commission; or

(b) The sale, transfer or other disposition of all or substantially all of the assets of the Company to any Person other than an Affiliate.

"**Code**" means the Internal Revenue Code of 1986, as it may be amended from time to time. Any reference to a section of the Code shall be deemed to include a reference to any regulations promulgated thereunder.

"**Common Stock**" means the Common Stock, $0.00001 par value per share, of the Company.

"**Company**" means Energy Exploration Technologies, Inc., a Puerto Rico corporation, and any successor thereto.

"**Continuous Service**" means that the Participant's service with the Company or an Affiliate as Chief Science Officer (or equivalent position) is not interrupted or terminated. The Participant's Continuous Service shall not be deemed to have terminated merely because of a change in the capacity in which the Participant renders service to the Company or an Affiliate or a change in the entity for which the Participant renders such service, provided that there is no interruption or termination of the Participant's Continuous Service as the Chief Science Officer of the Company or an Affiliate; provided further that if any Award is subject to Section 409A of the Code, this sentence shall only be given effect to the extent consistent with Section 409A of the Code. For example, a change in status from an independent contractor of the Company to an employee of an Affiliate will not constitute an interruption of Continuous Service.

"**Detrimental Activity**" means any of the following: (i) unauthorized disclosure of any confidential or proprietary information of the Company or any of its Affiliates; (ii) any activity that would be grounds to terminate the Participant's employment or service with the Company or any of its Subsidiaries for Cause; (iii) the breach of any Restrictive Covenant Agreement; (iv) fraud or conduct contributing to any financial restatements or irregularities, as determined by the Board in its sole discretion; or (v) any other conduct or act determined to be materially injurious, detrimental or prejudicial to any interest of the Company or any of its Affiliates, as determined by the Board in its sole discretion.

"**Director**" means a member of the Board.

"**Disability**" means that the Participant is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. The determination of whether an individual has a Disability shall be determined under procedures established by the Board. The Board may rely on any determination that the Participant is disabled for purposes of benefits under any long-term disability plan maintained by the Company or any Affiliate in which the Participant participates.

"**Effective Date**" shall mean the date as of which this Plan is adopted by the Board.

"**Exchange Act**" means the Securities Exchange Act of 1934, as amended, and any successor thereto.

"**Grant Date**" means the date on which the Board adopts a resolution, or takes other appropriate action, expressly granting an Award to the Participant that specifies the key terms and conditions of the Award or, if a later date is set forth in such resolution, then such date as is set forth in such resolution.

**"Organic Documents"** means the Company's Certificate of Incorporation and Bylaws, as amended from time to time, and the Stockholder Agreements.

"**Participant**" means Theodore Dilenschneider.

"**Person**" means any individual, entity or group (within the meaning of Section 13(d)(3) or 14(d)(2) of the Exchange Act).

"**Plan**" means this Energy Exploration Technologies, Inc. Special Equity Incentive Plan, as amended and/or amended and restated from time to time.

"**Preferred Stock**" means the Series A-2 Preferred Stock, $0.00001 par value per share, of the Company.

"**Restricted Period**" has the meaning set forth in Section 5.

"**Restricted Stock**" means Common Stock and Preferred Stock subject to certain specified restrictions (including, without limitation, a requirement that the Participant provide Continuous Service for a specified period of time) granted under Section 5 of the Plan.

**"Restrictive Covenant Agreement"** means any non-competition, non-solicitation, non-disparagement or other agreement containing restrictive covenants with the Company or its Affiliates.

"**Stock"** means, collectively, the Common Stock and the Preferred Stock.

"**Stockholder Agreements**" means any stockholders agreements, investors' rights agreements, voting agreements, right of first refusal agreements, co-sale agreements and any similar agreements relating to the securities of the Company.

**"Subsidiary"** means, with respect to any person (herein referred to as the **"parent"**), any corporation, partnership, limited liability company or other entity of which securities or other ownership interests representing more than 50% of the equity or more than 50% of the ordinary voting power or more than 50% of the general partnership interests are, at the time any determination is being made, owned, controlled or held, directly or indirectly. Unless the context otherwise requires, references to a **"Subsidiary"** mean a Subsidiary of the Company

3. Administration.

   1. Authority of Board. The Plan shall be administered by the Board. Subject to the terms of the Plan, the Board's charter and Applicable Laws, and in addition to other express powers and authorization conferred by the Plan, the Board shall have the authority:

      (a) to construe and interpret the Plan and apply its provisions;

      (b) to promulgate, amend, and rescind rules and regulations relating to the administration of the Plan;

      (c) to authorize any person to execute, on behalf of the Company, any instrument required to carry out the purposes of the Plan;

      (d) to delegate its authority to one or more officers of the Company;

      (e) to determine when Awards are to be granted under the Plan and the applicable Grant Date;

      (f) to determine the number of shares of Restricted Stock to be made subject to each Award;

      (g) to prescribe the terms and conditions of each Award, including vesting provisions, and to specify the provisions of the Award Agreement relating to such grant;

      (h) to amend any outstanding Awards, including for the purpose of modifying the time or manner of vesting, or the term of any outstanding Award; *provided*, *however*, that if any such amendment impairs the Participant's rights or increases the Participant's obligations under his or her Award or creates or increases the Participant's federal income tax liability with respect to an Award, such amendment shall also be subject to the Participant's consent;

      (i) to make decisions with respect to outstanding Awards that may become necessary upon a change in corporate control or an event that triggers anti-dilution adjustments;

      (j) to interpret, administer, reconcile any inconsistency in, correct any defect in and/or supply any omission in the Plan and any instrument or agreement relating to, or Award granted under, the Plan; and

(k) to exercise discretion to make any and all other determinations which it determines to be necessary or advisable for the administration of the Plan.

2. Board Decisions Final. All decisions made by the Board pursuant to the provisions of the Plan shall be final and binding on the Company and the Participant, unless such decisions are determined by a court having jurisdiction to be arbitrary and capricious.

4. Shares Subject to the Plan.

   1. Subject to adjustment in accordance with Section 9, a total of **five thousand (5,000)** shares of the Common Stock, and **two thousand five hundred (2,500)** shares of the Preferred Stock shall be available for the grant of Awards under the Plan.

   2. Shares of Common Stock available for distribution under the Plan may consist, in whole or in part, of authorized and unissued shares or treasury shares.

   3. Any shares of Common Stock subject to an Award that is canceled, forfeited or expires prior to exercise or realization, either in full or in part, shall again become available for issuance under the Plan. Any shares of Preferred Stock subject to an Award that is canceled, forfeited or expires prior to exercise or realization shall not be available for reissuance under the Plan.

   4. If the Board authorizes the assumption of awards pursuant to Section 10.1 hereof, the assumption will reduce the number of shares available for issuance under the Plan in the same manner as if the assumed awards had been granted under the Plan.

   5. Any shares of Restricted Stock subject to an Award shall have the rights, preferences and privileges set forth in the Organic Documents.

5. Restricted Stock. An Award may, but need not, provide that such Award may not be sold, assigned, transferred or otherwise disposed of, pledged or hypothecated as collateral for a loan or as security for the performance of any obligation or for any other purpose for such period (the "**Restricted Period**") as the Board shall determine. Each Award shall be subject to the conditions set forth in this Section 5, and to such other conditions not inconsistent with the Plan as may be reflected in the applicable Award Agreement.

   1. Award Agreement. The Participant shall execute and deliver to the Company an Award Agreement setting forth the restrictions and other terms and conditions applicable to the Restricted Stock. If the Participant fails to execute an agreement evidencing an Award, the Award shall be null and void. Subject to the restrictions set forth in the Award, the Participant generally shall have the rights and privileges of a stockholder as to such Restricted Stock, including the right to vote such Restricted Stock and the right to receive dividends.

   2. Restrictions.

      (a) Restrictions on Restricted Stock. Restricted Stock awarded to the Participant shall be subject to the following restrictions until the expiration of the Restricted Period, and to such other terms and conditions as may be set forth in the applicable Award Agreement: (A) the shares shall be subject to the restrictions on transferability set forth in the Award Agreement; (B) the shares shall be subject to forfeiture or repurchase to the extent provided in the applicable Award Agreement; and (C) to the extent such shares are forfeited, the stock certificates shall be returned to the Company, and all rights of the Participant to such shares and as a stockholder with respect to such shares shall terminate without further obligation on the part of the Company.

      (b) Board Discretion to Remove Restrictions. The Board shall have the authority to remove any or all of the restrictions on the Restricted Stock whenever it may determine that, by reason of changes in Applicable Laws or other changes in circumstances arising after the Grant Date, such action is appropriate.

3. Restricted Period. The Restricted Period shall commence on the Grant Date and end at the time or times set forth on a schedule established by the Board in the applicable Award Agreement; *provided*, *however*, that notwithstanding any such vesting dates, the Board may in its sole discretion accelerate the vesting of any Award at any time and for any reason. The Board may, but shall not be required to, provide for an acceleration of vesting in the terms of any Award Agreement upon the occurrence of a specified event.

4. Delivery of Restricted Stock. Upon the expiration of the Restricted Period with respect to any shares of Restricted Stock, the restrictions set forth in Section 5.2(a) and the applicable Award Agreement shall be of no further force or effect with respect to such shares, except as set forth in the applicable Award Agreement. No Award may be granted or settled for a fraction of a share of Restricted Stock.

6. Securities Law Compliance.

   1. Securities Registration. No Awards shall be granted under the Plan unless and until the Company and/or the Participant have complied with all applicable federal and state registration, listing and/or qualification requirements and all other requirements of law or of any regulatory agencies having jurisdiction.

   2. Representations; Legends. The Board may, as a condition to the grant of any Award under the Plan, require the Participant to (i) represent in writing that the shares of Restricted Stock received in connection with such Award are being acquired for investment and not with a view to distribution and (ii) make such other representations and warranties as are deemed appropriate by counsel to the Company. Each certificate representing shares of Restricted Stock acquired under the Plan shall bear a legend in such form as the Company deems appropriate.

7. Use of Proceeds from Restricted Stock. Proceeds from the sale of Restricted Stock pursuant to Awards, or upon exercise thereof, shall constitute general funds of the Company.

8. Miscellaneous.

   1. Acceleration of Exercisability and Vesting. The Board shall have the power to accelerate the time at which an Award may first be exercised or the time during which an Award or any part thereof will vest in accordance with the Plan, notwithstanding the provisions in the Award stating the time at which it may first be exercised or the time during which it will vest.

   2. Stockholder Rights. Except as provided in the Plan or an Award Agreement, the Participant shall not be deemed to be the holder of, or to have any of the rights of a holder with respect to, any shares of Restricted Stock subject to an Award unless and until such Participant has satisfied all requirements for exercise or settlement of the Award pursuant to its terms (including any obligation to execute the Stockholder Agreements) and no adjustment shall be made for dividends (ordinary or extraordinary, whether in cash, securities or other property) or distributions of other rights for which the record date is prior to the date such Restricted Stock certificate is issued, except as provided in Section 9 hereof.

   3. No Employment or Other Service Rights. Nothing in the Plan or any instrument executed or Award granted pursuant thereto shall confer upon the Participant any right to continue to serve the Company or an Affiliate in the capacity in effect at the time the Award was granted or shall affect the right of the Company or an Affiliate to terminate (a) the employment of an employee with or without notice and with or without Cause or (b) the service of a Director pursuant to the Bylaws of the Company or an Affiliate, and any applicable provisions of the corporate law of the state in which the Company or the Affiliate is incorporated, as the case may be.

   4. Transfer; Approved Leave of Absence. For purposes of the Plan, no termination of employment by the Participant shall be deemed to result from either (a) a transfer of employment to the Company from an Affiliate or from the Company to an Affiliate, or from one Affiliate to another, or (b) an approved leave of absence for military service or sickness, or for any other purpose approved by the Company, if the Participant's right to reemployment is guaranteed either by a statute or by

contract or under the policy pursuant to which the leave of absence was granted or if the Board otherwise so provides in writing, in either case, except to the extent inconsistent with Section 409A of the Code if the applicable Award is subject thereto.

5. Withholding Obligations. To the extent provided by the terms of an Award Agreement and subject to the discretion of the Board, the Participant may satisfy any federal, state or local tax withholding obligation relating to the exercise or acquisition of Restricted Stock under an Award by any of the following means (in addition to the Company's right to withhold from any compensation paid to the Participant by the Company) or by a combination of such means: (a) tendering a cash payment; (b) authorizing the Company to withhold shares of Common Stock from the shares of Restricted Stock otherwise issuable to the Participant as a result of the exercise or acquisition of Restricted Stock under the Award, provided, however, that no shares of Common Stock are withheld with a value exceeding the minimum amount of tax required to be withheld by law; or (c) delivering to the Company previously owned and unencumbered shares of Restricted Stock of the Company.

9. Adjustments Upon Changes in Stock. In the event of changes in the outstanding capital stock or in the capital structure of the Company by reason of any stock or extraordinary cash dividend, stock split, reverse stock split, an extraordinary corporate transaction such as any recapitalization, reorganization, merger, consolidation, combination, exchange, or other relevant change in capitalization occurring after the Grant Date of any Award, Awards granted under the Plan and any Award Agreements and the maximum number of shares of Restricted Stock subject to Awards stated in Section 4 will be equitably adjusted or substituted, as to the number, price or kind of a share of Common Stock or other consideration subject to such Awards to the extent necessary to preserve the economic intent of such Award.

10. Effect of Change in Control.

    1. In the event of a Change in Control, the Board may, but shall not be obligated to:

        (a) accelerate, vest or cause the restrictions to lapse with respect to all or any portion of any Award;

        (b) cancel Awards and cause to be paid to the holders of vested Awards the value of such Awards, if any, as determined by the Board, in its sole discretion; or

        (c) provide for the issuance of substitute Awards or the assumption or replacement of such Awards.

    2. The obligations of the Company under the Plan shall be binding upon any successor corporation or organization resulting from the merger, consolidation or other reorganization of the Company, or upon any successor corporation or organization succeeding to all or substantially all of the assets and business of the Company and its Subsidiaries, taken as a whole.

11. Amendment of the Plan and Awards.

    1. Amendment of the Plan. The Board at any time, and from time to time, may amend or terminate the Plan on a prospective basis. However, except as provided in Section 9 relating to adjustments upon changes in Common Stock and Section 11.3, no amendment shall be effective unless approved by the stockholders of the Company to the extent stockholder approval is necessary to satisfy any Applicable Laws. At the time of such amendment, the Board shall determine, upon advice from counsel, whether such amendment will be contingent on stockholder approval.

    2. Stockholder Approval. The Board may, in its sole discretion, submit any other amendment to the Plan for stockholder approval.

    3. Contemplated Amendments. It is expressly contemplated that the Board may amend the Plan in any respect the Board deems necessary or advisable to provide the Participant with the maximum benefits provided or to be provided under the provisions of the Code and the regulations promul-

gated thereunder relating the nonqualified deferred compensation provisions of Section 409A of the Code and/or to bring the Plan and/or Awards granted under it into compliance therewith.

4. No Impairment of Rights. Rights under any Award granted before amendment of the Plan shall not be impaired by any amendment of the Plan unless (a) the Company requests the consent of the Participant and (b) the Participant consents in writing.

5. Amendment of Awards. The Board at any time, and from time to time, may amend the terms of any one or more Awards; *provided*, *however*, that the Board may not affect any amendment which would otherwise constitute an impairment of the rights under any Award unless (a) the Company requests the consent of the Participant and (b) the Participant consents in writing.

12. General Provisions.

1. Clawback; Forfeiture. Notwithstanding anything to the contrary contained herein, the Board may, in its sole discretion, provide in an Award Agreement or otherwise that the Board may cancel such Award if the Participant has engaged in or engages in any Detrimental Activity. The Board may, in its sole discretion, also provide in an Award Agreement or otherwise that (i) if the Participant has engaged in or engages in Detrimental Activity, the Participant will forfeit any gain realized on the vesting, exercise or settlement of any Award, and must repay the gain to the Company and (ii) if the Participant receives any amount in excess of what the Participant should have received under the terms of the Award for any reason (including, without limitation, by reason of a financial restatement, mistake in calculations or other administrative error), then the Participant shall be required to repay any such excess amount to the Company. Without limiting the foregoing, all Awards shall be subject to reduction, cancellation, forfeiture or recoupment to the extent necessary to comply with Applicable Laws.

2. Stockholder Agreements. In connection with the grant, vesting and/or exercise of any Award under the Plan, the Board may require the Participant to execute and become a party to the Stockholder Agreements as a condition of such grant, vesting and/or exercise. Each Participant agrees promptly to execute and become a party to any such Stockholder Agreement promptly following request by the Board. The Stockholder Agreements may contain restrictions on the transferability of shares of Common Stock acquired under the Plan (such as a right of first refusal or a prohibition on transfer) and such shares may be subject to call rights and drag-along rights of the Company and certain of its investors. The Company shall also have any repurchase rights set forth in the Stockholder Agreements or any Award Agreement.

3. Unfunded Plan. The Plan shall be unfunded. Neither the Company, the Board nor the Board shall be required to establish any special or separate fund or to segregate any assets to assure the performance of its obligations under the Plan.

4. Recapitalizations. Each Award Agreement shall contain provisions required to reflect the provisions of Section 9.

5. Delivery. Upon exercise of a right granted under this Plan, the Company shall issue Restricted Stock or pay any amounts due within a reasonable period of time thereafter. Subject to any statutory or regulatory obligations the Company may otherwise have, for purposes of this Plan, 30 days shall be considered a reasonable period of time.

6. No Fractional Shares. No fractional shares of Restricted Stock shall be issued or delivered pursuant to the Plan. The Board shall determine whether cash, additional Awards or other securities or property shall be issued or paid in lieu of fractional shares of Restricted Stock or whether any fractional shares should be rounded, forfeited or otherwise eliminated.

7. Other Provisions. The Award Agreements authorized under the Plan may contain such other provisions not inconsistent with this Plan, including, without limitation, restrictions upon the exercise of the Awards, as the Board may deem advisable.

8. Section 409A. The Plan is intended to comply with Section 409A of the Code to the extent subject

thereto, and, accordingly, to the maximum extent permitted, the Plan shall be interpreted and administered to be in compliance therewith. Any payments described in the Plan that are due within the "short-term deferral period" as defined in Section 409A of the Code shall not be treated as deferred compensation unless Applicable Laws require otherwise. Notwithstanding anything to the contrary in the Plan, to the extent required to avoid accelerated taxation and tax penalties under Section 409A of the Code, amounts that would otherwise be payable and benefits that would otherwise be provided pursuant to the Plan during the six (6) month period immediately following the Participant's termination of Continuous Service shall instead be paid on the first payroll date after the six-month anniversary of the Participant's separation from service (or the Participant's death, if earlier). Notwithstanding the foregoing, neither the Company nor the Board shall have any obligation to take any action to prevent the assessment of any additional tax or penalty on the Participant under Section 409A of the Code and neither the Company nor the Board will have any liability to any Participant for such tax or penalty.

9. Beneficiary Designation. Each Participant under the Plan may from time to time name any beneficiary or beneficiaries by whom any right under the Plan is to be exercised in case of such Participant's death. Each designation will revoke all prior designations by the same Participant, shall be in a form reasonably prescribed by the Board and shall be effective only when filed by the Participant in writing with the Company during the Participant's lifetime.

10. Expenses. The costs of administering the Plan shall be paid by the Company.

11. Severability. If any of the provisions of the Plan or any Award Agreement is held to be invalid, illegal or unenforceable, whether in whole or in part, such provision shall be deemed modified to the extent, but only to the extent, of such invalidity, illegality or unenforceability and the remaining provisions shall not be affected thereby.

12. Plan Headings. The headings in the Plan are for purposes of convenience only and are not intended to define or limit the construction of the provisions hereof.

13. Choice of Law. The law of the Commonwealth of Puerto Rico shall govern all questions concerning the construction, validity and interpretation of this Plan, without regard to such state's conflict of law rules.

As adopted by the Board of Directors of Energy Exploration Technologies, Inc., on May 9, 2019.

As approved by the stockholders of Energy Exploration Technologies, Inc., on May 9, 2019.

Teague Egan, President and

Chief Executive Officer