**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| THEODORE DILENSCHNEIDER,<br>*Plaintiff,*<br>v.<br>ENERGY EXPLORATION TECHNOLOGIES, INC. d/b/a ENERGYX,<br>*Defendant.* | CIVIL NO. 26-CV-01335 (SCC) |

**MOTION TO DISMISS**

**COMES NOW** Defendant ENERGY EXPLORATION TECHNOLOGIES, INC. d/b/a ENERGYX ("EnergyX" or the "Company"), through the undersigned counsel, and, without waiving any other defenses, respectfully states and prays for relief, pursuant to Fed. R. Civ. P. 12(b)(6), as follows:

I. INTRODUCTION AND FACTUAL BACKGROUND AS ALLEGED

This civil action arises from a soured business relationship between a consultant and a fledgling technology company and turns largely on the terms of several integrated agreements governing equity vesting and termination. The plaintiff, Theodore Dilenschneider ("Plaintiff"), a graduate student and researcher in chemical engineering during the period relevant to the complaint, alleges that, in 2018, he collaborated with Teague Egan in advancing a lithium-extraction technology that later became associated with Energy Exploration Technologies, Inc. ("EnergyX"), a Puerto Rico corporation formed in December 2018.

Plaintiff alleges that he owns equity in Energy Exploration Technologies, Inc. ("EnergyX" or the "Company") and that certain corporate actions, including the Company's Third Amended and Restated Certificate of Incorporation, improperly diluted or impaired his rights. The Complaint's own allegations and incorporated exhibits demonstrate that Plaintiff's purported entitlement to relief rests on a premise that the governing agreements foreclose, that he owned vested equity in Energy Exploration Technologies, Inc. He did not. Because all of Plaintiff's claims depend upon his alleged stockholder status and vested ownership interest, the Complaint should be dismissed in its entirety since Plaintiff fails to plausibly allege those predicate rights.

A. The Consulting Agreement and Contractual Framework

On April 15, 2019, the parties executed a Consulting Services Agreement (the "Consulting Agreement"). Under that agreement, Plaintiff was engaged as Chief Scientific Officer and agreed to perform defined services while maintaining his concurrent academic affiliation. Compensation took two forms: a monthly consulting fee and a contingent equity award. The Consulting Agreement contemplated a grant of restricted stock, consisting of 5,000 common shares and 2,500 preferred shares, vesting in equal installments every six months over a four-year period. (Compl. ¶ 45; Ex. 1) The Consulting Agreement further contemplated that any equity compensation would be governed by a separate award agreement issued under an equity incentive plan. (Compl. ¶ 46; Ex. 1 § 3(b)). The agreement

also established that the relationship could be terminated upon notice, including without cause upon advance written notice. (Compl. ¶¶ 60–65; Ex. 1 § 7).

As contemplated by the Consulting Agreement, on May 9, 2019, the parties executed a Restricted Stock Award Agreement (the "Award Agreement"), which governs the equity award at issue, and EnergyX adopted the Special Equity Incentive Plan (the "Plan"). (Compl. ¶¶ 47-48; Ex. 2). The Award Agreement provided that the Company issued to Plaintiff an Award of Restricted Stock consisting of 7,500 shares of Company stock (5,000 shares of common stock and 2,500 shares of Series A-2 preferred stock) subject to a multi-year vesting schedule, and to the terms, conditions, and restrictions set forth in the Award Agreement and the Plan. (Compl. ¶ 48; Ex. 2 § 1). The Award Agreement established detailed and express vesting conditions. Specifically, vesting would occur in eight equal installments of 12.5% over a four-year period, with each installment contingent upon Plaintiff remaining in "Continuous Service through the applicable vesting date." (Ex. 2 § 3.1). The Complaint further alleges that the Award Agreement and Plan afforded Plaintiff contractual anti-dilution protections requiring adjustment of his equity interest upon specified changes in EnergyX's capitalization or capital structure. (Compl. ¶¶ 49-51).

B. <u>Plaintiff's Cessation of Continuous Service and Termination</u>

The Complaint alleges that on September 23, 2019, approximately four months after the Award Agreement Grant Date, Plaintiff informed the Company that he was experiencing

“health changes that have begun to severely impact [his] personal and work life” and that he would be “reducing [his] involvement with EnergyX.” while focusing on treatment and recovery. (Compl. ¶ 58) In October 2019, Plaintiff voluntarily hospitalized himself due to an "acute mental health crisis" and was later diagnosed with Bipolar I Disorder which "severely impacted his ability to sleep and think clearly." He remained hospitalized until November 5, 2019 and continued in recovery for weeks thereafter. (Compl. ¶¶ 56–59, 63).

On October 24, 2019, while Plaintiff was hospitalized, the company founder, Teague Egan, sent notice to Plaintiff that he would no longer continue in his consultant role as Chief Scientific Officer due to his medical condition, and a subsequent letter dated November 8, 2019 confirmed termination of the Consulting Agreement. (Compl. ¶¶ 60–64; Ex. 5). The Complaint further alleges that the notice of October 24, 2019 stated, "this email serves as notice pursuant to Section 7(b) in relation to Section 2 of our Consulting Agreement," thus invoking the Consulting Agreement's termination provision due to breach or default of the Agreement's material obligations. (Compl. ¶ 62) Notwithstanding the two weeks effective notice provision invoked by the October 24, 2019 letter, Plaintiff alleges that termination should not have become effective until November 23, 2019. (Compl. ¶ 65).

Accordingly, based on Plaintiff’s own allegations: Plaintiff began reducing his involvement no later than September 23, 2019 and he was hospitalized and unable to remain

in Continuous Service to the Company throughout October and for weeks into November 2019.

C. Plaintiff's Allegations Regarding Vested Equity

Plaintiff alleges that, notwithstanding Plaintiff's cessation of Continuous Service in the autumn of 2019, Mr. Egan "confirm[ed]" in the November 8, 2019 email that Plaintiff held "313 vested shares of the Company's Series A-2 Preferred Stock and 625 shares of the Company's Common Stock." (Compl. ¶ 66; Ex. 5). He further alleges that the Company thereafter continued to recognize him as a stockholder. (Compl. ¶ 67). Based on those assertions, Plaintiff claims he held approximately 0.938% of the Company's equity and that he is "entitled to maintain that level of ownership" in the Company. (Compl. ¶ 66-68, 72-74).

D. Alleged Dilution and Capital Structure Changes

According to the Complaint, the Company thereafter completed multiple financing transactions and stock issuances that increased its outstanding equity, which Plaintiff alleges diluted and reduced his ownership interest from approximately 0.938% to approximately 0.572%. (Compl. ¶ 72-75) in general terms that, following his departure, EnergyX issued "tens of millions of new shares" across multiple securities classes without adjusting his holdings, thereby reducing his ownership percentage. (Compl. ¶¶ 73–75).

The Complaint further alleges that EnergyX adopted amended certificates of incorporation culminating in the Third Amended and Restated Certificate of Incorporation

in or about April 2021 which adversely affected the rights associated with his preferred stock by modifying distribution priorities, voting rights, and conversion provisions; and was adopted without notice to him and without affording him the vote allegedly required by Puerto Rico corporate law. (Compl. ¶¶ 77–84, 116-119). These claims are expressly premised on Plaintiff's assertion that he was a stockholder whose rights were affected by the challenged corporate action. (Compl. ¶¶ 117–119, 126–127).

E. Plaintiff's Conversion and Fraud Allegations

Plaintiff further alleges that the Company later sought to convert his preferred shares to common stock through misrepresentation and omission of material facts. (Compl. ¶¶ 86–91, 121). According to the Complaint, the Company did not disclose the existence or impact of the Third Amended Certificate at the time of the purported conversion. (Compl. ¶¶ 87, 121). Plaintiff contends that the conversion is therefore void and unenforceable. (Compl. ¶¶ 96, 127(d)). The Complaint does not allege when the purported conversion occurred, when any statements were made, or when Plaintiff relied on them, instead leaving the timing of the alleged transaction entirely unspecified.

F. Plaintiff's Claims and Requested Relief

Years later, after obtaining access to the Company's capitalization records, Plaintiff concluded that EnergyX had improperly diluted his equity interest and impaired his rights as a holder of Founders-2 Preferred Stock. He thereafter demanded restoration of what he

contends is his ownership interest and preferred-stock rights. According to the Complaint, the Company rejected those demands and asserted that Plaintiff had not vested any equity under the Award Agreement and was not a stockholder of the company. (Compl. ¶¶ 99-105) This action followed. The complaint asserts claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of Puerto Rico corporate law, fraud and fraudulent misrepresentation, and declaratory relief. At bottom, the dispute concerns whether Plaintiff vested in the restricted stock awarded under the Award Agreement and Plan, whether EnergyX was required to preserve his alleged ownership percentage and preferred-stock rights thereafter, and what rights, if any, survived the termination of his consulting relationship with the Company. (Compl. ¶¶ 107–127)

Plaintiff seeks, among other relief: restoration of his alleged equity to 0.938%; a declaration that the Third Amended Certificate is void; restoration of his alleged preferred stock rights; and a declaration confirming that he vested equity as of November 2019. (Compl. ¶ 127).

## II. PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

### A. APPLICABLE LEGAL STANDARD UNDER RULE 12(B)(6)

To survive a motion under Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim that is plausible on its face. Ashcroft v Iqbal, 556 U.S. 662, 678 (2009).

Although the Court must accept well-pleaded factual allegations as true, it need not accept legal conclusions, conclusory assertions, or unreasonable inferences masquerading as facts. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007). Where a complaint incorporates documents by reference and attaches them as exhibits, the Court "may properly consider the relevant entirety of a document integral to or explicitly relied upon by the complaint" in resolving a Rule 12(b)(6) motion. Clorox Co. P.R. v. Proctor & Gamble Com. Co., 228 F.3d 24, 32 (1st Cir. 2000). Moreover, when allegations in a complaint conflict with documents incorporated into the pleading, the documents control. Id. That principle is especially important here because Plaintiff's claims depend upon the legal effect of the Consulting Agreement, Restricted Stock Award Agreement, the Special Equity Incentive Plan, and the November 8, 2019 letter, all of which are attached to and incorporated into the Complaint.

B. EVERY CLAIM IN THE COMPLAINT DEPENDS UPON PLAINTIFF'S ALLEGED OWNERSHIP OF VESTED EQUITY

The Complaint is predicated on a single foundational contention: that Plaintiff acquired vested equity in EnergyX and thereby became a stockholder whose ownership rights were later diluted, impaired, converted or unlawfully stripped away. (Compl. ¶¶ 66-84, 86-96, 100-105, 107-127) Indeed, every single claim depends upon that premise. The breach-of-contract claim alleges dilution of Plaintiff's ownership interest and failure to honor purported anti-dilution protections. (Compl. ¶¶ 109-110) The implied-covenant claim

alleges conduct that supposedly deprived Plaintiff of the benefits of his equity ownership. (Compl. ¶¶ 112-114) The Puerto Rico corporate law claim depends upon Plaintiff's alleged status as a holder of preferred stock entitled to notice and class voting rights. (Compl. ¶¶ 116-119) The fraud claim depends upon Plaintiff's allegation that he relinquished stockholder rights through the challenged conversion transaction. (Compl. ¶¶ 121-124) Finally, the declaratory judgment claim seeks declarations confirming Plaintiff's alleged ownership percentage, preferred-stock rights, vesting status, and stockholder rights. (Compl. ¶¶ 126-127)

Accordingly, if the Complaint fails plausibly to allege that Plaintiff acquired vested equity under the governing agreements, every claim necessarily fails.

## C. THE GOVERNING AGREEMENTS CONDITIONED VESTING UPON CONTINUOUS SERVICE AND PROHIBITED PARTIAL VESTING

The Consulting Agreement did not grant Plaintiff immediate ownership of unrestricted shares. Instead, it contemplated a future grant of restricted stock pursuant to a separate Award Agreement and an equity incentive plan. (Compl. ¶¶ 46-48) The Award Agreement and Plan imposed express vesting conditions. As alleged by Plaintiff and reflected in the governing documents, vesting was conditioned on Plaintiff's remaining in "Continuous Service" through the applicable vesting date. The Award Agreement established a forty-eight-month vesting schedule consisting of eight equal installments of 12.5%. (Compl. ¶¶ 47-50). The Award Agreement further provided that there would be "no proportionate or

partial vesting in the periods prior to each vesting date set forth above and all vesting shall occur only on the applicable vesting date." The forfeiture provisions are equally explicit. The Award Agreement provides that "upon termination of Continuous Service, all unvested Company Stock shall be immediately forfeited." It also provides: "if the Grantee's Continuous Service terminates for any reason at any time before all of his Company Stock has vested, the Grantee's unvested Company Stock shall be automatically forfeited upon such termination of Continuous Service." (Compl. Ex. 2 § 3.1 p. 2) The Plan likewise provides that forfeited shares terminate together with all associated stockholder rights. (Compl. Ex. 3, p.4, ¶5(2)(a)(C)). Thus, under the documents incorporated into the Complaint, Plaintiff could obtain vested ownership only by satisfying the contractual vesting conditions established in the Award Agreement and Plan.

D. PLAINTIFF'S OWN ALLEGATIONS DO NOT PLAUSIBLY ESTABLISH SATISFACTION OF THOSE VESTING CONDITIONS

Plaintiff alleges that on September 23, 2019, he informed EnergyX that health issues were severely affecting his personal and professional life and that he would be reducing his involvement with the Company. (Compl. ¶ 58). He further alleges that he voluntarily hospitalized himself in October 2019, remained hospitalized until November 5, 2019 and continued in recovery for weeks thereafter. (Compl. ¶¶ 59, 63) Plaintiff also alleges that, on October 24, 2019, Mr. Egan transmitted correspondence invoking Section 7(b) of the

Consulting Agreement and communicating the intent to end his service relationship with the Company. (Compl. ¶¶ 60-62).

Most significantly, Plaintiff alleges that, even under his own reading of the Consulting Agreement, the latest possible effective termination date was November 23, 2019. (Compl. ¶ 65). Yet Plaintiff's claims require this Court to conclude that he nevertheless satisfied the Award Agreement's express vesting requirements notwithstanding the contractual provisions requiring Continuous Service through the applicable vesting date and prohibiting partial vesting. The Complaint never plausibly explains how those contractual conditions were met. At a minimum, the Complaint pleads facts that place Plaintiff's vesting theory in direct conflict with the vesting and forfeiture provisions contained in the very agreements upon which he relies.

E. NOVEMBER 8, 2019 LETTER DOES NOT CURE THIS DEFECT

Plaintiff relies heavily on the November 8, 2019 letter from Mr. Egan, which stated that he held 313 vested shares of preferred stock and 625 vested shares of common stock. (Compl. ¶¶ 64-68, 104, 127(e)). But the Complaint itself incorporates the Award Agreement and Plan, which establish the operative vesting requirements. The November 8 letter does not purport to amend the Award Agreement, amend the Plan, accelerate vesting, waive forfeiture, remove vesting conditions, or exercise any Board authority granted under the Plan. Nor does Plaintiff allege that the Board formally exercised its authority to accelerate vesting,

amend the Award Agreement, or modify the Plan. The Complaint instead asks the Court to treat the letter as controlling despite the contrary terms of the governing agreements incorporated into the pleading. Under settled Rule 12(b)(6) principles, Plaintiff cannot avoid the express contractual provisions by relying on conclusory characterizations that conflict with the governing contracts. See Clorox, 228 F.3d at 32.

F. BECAUSE PLAINTIFF FAILS PLAUSIBLY TO ALLEGE VESTED OWNERSHIP, EACH CAUSE OF ACTION FAILS.

Absent a plausible allegation of vested ownership, Plaintiff cannot establish the ownership interest necessary to support his contract claim, anti-dilution theory, or request for restoration of a purported 0.938% ownership stake. (Compl. ¶¶ 109-110, 127(a)). Likewise, Plaintiff cannot use the implied covenant of good faith and fair dealing to create rights inconsistent with the express vesting and forfeiture provisions of the governing agreements. (Compl. ¶¶ 112-114). Nor can Plaintiff establish entitlement to the preferred stock voting and consent rights that form the basis of Count III unless he first plausibly alleges ownership of the preferred shares to which those rights purportedly attach. (Compl. ¶¶ 116-119). The fraud claim fails for the same reason: Plaintiff's alleged injury depends upon the loss of stockholder rights that he has not plausibly alleged he possessed. (Compl. ¶¶ 121-124). Finally, the declaratory-relief claim rises or falls with Plaintiff's asserted stock ownership because every requested declaration presupposes the existence of vested stockholder rights.

(Compl. ¶ 127). For all these reasons, the Complaint fails to state a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6).

## III. COUNT IV OF THE COMPLAINT FAILS TO SATISFY RULE 9(b) AND THEREFORE FAILS TO STATE A CLAIM FOR FRAUD

### A. APPLICABLE LEGAL STANDARD UNDER RULE 9(b)

Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." The First Circuit has consistently held that a plaintiff must allege the time, place and content of the alleged false representations as well as the identity of the person making them and what was obtained as a result of the alleged fraud. Although intent and knowledge may be alleged generally, the underlying circumstances must be pleaded with particularity. A complaint that identifies statements but fails plausibly to allege falsity, reliance, causation, or a duty to disclose remains subject to dismissal under Rules 9(b) and 12(b)(6).

### B. THE COMPLAINT FAILS TO PLEAD A DUTY TO DISCLOSE

Much of Count IV is premised not on affirmative misrepresentations but on alleged omissions. Plaintiff asserts that EnergyX failed to disclose the Third Amended Certificate; the purported impact of that certificate on his alleged preferred-stock rights; and contemplated future amendments. (Compl. ¶¶ 87-93, 121-122). But fraud by omission requires more than silence. The Complaint must plausibly allege the existence of a legal duty requiring

disclosure of the omitted facts. Under Puerto Rico law, fraud affecting a contracting party is inherently contractual and may not be presumed; the party alleging it bears the burden of demonstrating the intentional fault or bad faith of the party charged, because good faith is presumed. See Prado Alvarez v. R.J. Reynolds Tobacco Co., 405 F.3d 36 (1st Cir. 2005). Count IV contains no allegations identifying the source of any such duty. Plaintiff repeatedly alleges that information was not disclosed, but he does not plausibly allege why EnergyX was legally required to provide that information in connection with the challenged conversion memorandum. (Id.) For that reason, the omission-based fraud theory fails to discharge Plaintiff's pleading burden.

C. PLAINTIFF WAIVED HIS STATUTORY INFORMATION RIGHTS

Plaintiff's omission theory depends on the premise that EnergyX was obligated to furnish him corporate governance and capitalization information, the existence of the Third Amended Certificate, the Company's amendments, and its capital-structure changes, that he says was withheld. (Compl. ¶¶ 87-93, 97, 121-122). But Plaintiff bargained that entitlement away. In the very Award Agreement on which his claims depend, Plaintiff "unconditionally and irrevocably" waived his statutory Inspection Rights under Section 3650 of the Puerto Rico General Corporations Act, the right, upon written demand under oath stating a proper purpose, to inspect and to make copies and extracts from the Company's stock ledger, the list of its stockholders, and its other books and records, until the Company's first public offering.

(Id. Ex. 2 § 18) Section 3650 is the source of a Puerto Rico stockholder's right to inspect corporate books and records. (§ 3650 Inspection of books and records, 14 L.P.R.A. § 3650) Because the Award Agreement is incorporated into and relied upon by the Complaint, the Court may consider the waiver on this motion. See Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193 (1st Cir. 2001).

Having irrevocably waived the statutory mechanism that alone entitled him to inspect the Company's books and governance records, Plaintiff cannot ground a fraud-by-omission claim on EnergyX's failure to volunteer that same information. A duty to disclose does not arise from a statutory right the plaintiff has contractually relinquished, and Puerto Rico's contractual dolo doctrine will not permit a party to bargain away his information rights and then recast the absence of that information as concealment. See Prado Alvarez v. R.J. Reynolds Tobacco Co., 405 F.3d 36 (1st Cir. 2005). The waiver independently negates the duty element of Count IV.

D. THE COMPLAINT FURTHER FAILS TO PLAUSIBLY ALLEGE RELIANCE AND CAUSATION

The Complaint also alleges that Plaintiff would not have executed the conversion memorandum had he known of the existence of the Third Amended Certificate and related facts. (Compl. ¶ 93). Yet elsewhere the Complaint alleges that the Third Amended Certificate had already been adopted months before the challenged conversion and had already altered

the rights associated with Plaintiff's alleged preferred stock. (Compl. ¶¶ 80-88). The Complaint therefore never plausibly explains what additional injury resulted from signing the conversion memorandum; how the conversion itself caused the loss of rights already allegedly impaired by the Third Amended Certificate; or what economic consequences flowed directly from the allegedly fraudulent statements. Absent plausible allegations of reliance and causation, Count IV cannot survive dismissal.

## IV. COUNTS II AND V SHOULD BE DISMISSED AS DUPLICATIVE

### A. COUNT II, THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CLAIM, IS DUPLICATIVE OF THE BREACH OF CONTRACT CLAIM

Under Puerto Rico law, the implied covenant of good faith and fair dealing cannot be used to create contractual rights that do not otherwise exist or to override express contractual provisions. Here, the implied-covenant claim rests on the same conduct underlying the breach-of-contract claim, including the alleged termination of Plaintiff's service relationship, the alleged failure to honor anti-dilution protections, alleged withholding of information, and alleged conduct surrounding the conversion memorandum. (Compl. ¶¶ 112-114)

The Complaint identifies no contractual gap requiring application of the implied covenant. Rather the parties' rights concerning vesting, forfeiture, stock ownership, dilution, and transfer of stock are expressly governed by the Consulting Agreement, Award

Agreement, and Plan (Compl. ¶¶ 45-51). Because Count II merely repackages the alleged contract breaches under a different label, it should be dismissed as duplicative of Count I.

B. COUNT V, SEEKING DECLARATORY RELIEF, IS DERIVATIVE OF SUBSTANTIVE CLAIMS

The Declaratory Judgment Act does not create an independent cause of action. The declarations sought in count V mirror the remedies sought elsewhere in the Complaint. Plaintiff seeks declarations that his ownership interest must be restored to 0.938%, the Third Amended Certificate is void, he retains preferred-stock rights, the conversion is unenforceable, and he vested equity under the Award Agreement. (Compl. ¶ 127) Those questions are identical to the issues presented by Counts I through IV. Accordingly, Count V serves no purpose independent of the substantive claims and should be dismissed as duplicative.

V. COUNT III, PUERTO RICO CORPORATE LAW CLAIM, FAILS BECAUSE PLAINTIFF DOES NOT PLAUSIBLY ALLEGE HE HELD OUTSTANDING SHARES OF FOUNDERS-2 PREFERRED STOCK WHEN THE THIRD AMENDED CERTIFICATE WAS ADOPTED, A PREREQUISITE TO INVOKING THE PROTECTIONS UNDER 14 LPRA §§ 3682.

Count III seeks relief under 14 LPRA §§ 3682 and 3652 based on Plaintiff's contention that EnergyX adopted the Third Amended Certificate without obtaining a class

vote from holders of the affected preferred-stock series. (Compl. ¶¶ 116-119) The threshold premise of that claim is that Plaintiff possessed the preferred-stock rights that allegedly entitled him to notice and a class vote. But the Complaint's pleading of entitlement to those rights depends entirely on Plaintiff's allegation that he acquired vested preferred shares under the Award Agreement and Plan. (Compl. ¶¶ 66-84). As discussed above, the governing agreements conditioned vesting on Continuous Service through the applicable vesting dates and subjected unvested shares to automatic forfeiture. Because the Complaint does not plausibly allege satisfaction of those vesting requirements, it likewise fails plausibly to allege the stockholder status necessary to invoke the protections of §§ 3682 and 3652. Absent plausible allegations establishing ownership of the preferred shares at issue, Plaintiff cannot maintain a claim based upon the alleged deprivation of voting or consent rights associated with those shares. Accordingly, Count III should be dismissed for failure to state a claim.

## VI. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The Complaint rests on the premise that Plaintiff acquired vested equity in EnergyX and thereby obtained the stockholder rights upon which each of his claims depends. But the governing agreements incorporated into the Complaint and included as exhibits condition vesting on Plaintiff's Continuous Service through specified vesting dates, prohibited partial vesting, and required automatic forfeiture of unvested shares

upon termination of Continuous Service. Plaintiff's own allegations establish that he was no longer able to perform his duties under the Consulting Agreement well before October 2019. The Complaint does not plausibly allege that the vesting conditions were satisfied, that the Board accelerated or waived those conditions, or that the November 8, 2019 correspondence amended the governing agreements or otherwise validly conferred vested stockholder rights upon Plaintiff.

Absent plausible allegations establishing that Plaintiff held outstanding shares of the relevant preferred stock, Plaintiff cannot invoke statutory rights belonging to holders of those shares. In particular, the class-voting protections of 14 LPRA § 3682(b)(2) apply to holders of outstanding shares of an affected class or series, while 14 LPRA § 3652 governs notice to stockholders entitled to vote. Because Plaintiff does not plausibly allege that he held outstanding Founders-2 Preferred Stock when the Third Amended and Restated Certificate of Incorporation was adopted, Count III fails to state a claim based upon an alleged deprivation of class-voting or notice rights. The Complaint therefore cannot establish that Plaintiff possessed the stockholder status necessary to challenge the 2021 corporate action on the grounds alleged.

Count I likewise fails to the extent it seeks contractual enforcement of an alleged vested equity interest or restoration of an alleged 0.938% ownership interest that is inconsistent with the express vesting and forfeiture provisions of the Award Agreement and

Plan. Count II cannot be used to circumvent those express contractual provisions: the implied covenant of good faith and fair dealing does not create contractual rights that contradict the parties' express agreement. Count IV independently fails under Federal Rule of Civil Procedure 9(b) because the Complaint does not identify with particularity the alleged misrepresentations, nor does it adequately plead an actionable duty to disclose, reliance, or causation. Plaintiff's omission theory fails for the further reason that he unconditionally waived, in the Award Agreement, the statutory information rights under Section 3650 that are the only source of any duty to disclose the corporate information he claims was withheld. (Compl. Ex. 2 § 18). The alleged omission concerning the Third Amended Certificate is particularly deficient because the Complaint does not explain how Plaintiff's subsequent execution of the conversion memorandum caused an injury distinct from any impairment of rights allegedly effected by the Third Amended Certificate itself. Finally, Count V does not provide an independent substantive basis for relief and necessarily fails to the extent the declaration sought depend upon rights that Plaintiff has not plausibly established under the substantive counts.

At bottom, Plaintiff cannot simultaneously rely upon the Award Agreement to establish his purported equity rights while disregarding the same instrument's express conditions governing vesting and forfeiture. The Complaint does not plausibly allege that Plaintiff satisfied those conditions or otherwise acquired outstanding preferred shares

necessary to invoke the statutory protections he claims were violated. Nor does it plead an actionable fraud theory with the particularity required by Rule 9(b). Accordingly, each substantive claim fails on an independent basis, and the claim for declaratory relief necessarily fails with them.

**WHEREFORE**, Defendant Energy Exploration Technologies, Inc. respectfully requests that the Court dismiss the Complaint in its entirety with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), award Defendant its taxable costs as permitted by law, and grant such other and further relief as the Court deems appropriate.

In San Juan, Puerto Rico this 24th day of August 2026.

Respectfully submitted,

**PEDRO ORTZ ÁLVAREZ, LLC**
*Attorneys for Energy Exploration Technologies, Inc.*
P.O. Box 9009
Ponce, PR 00732-9009
Tel (787) 841-7575
Fax (787) 841-0000

*/s/ G. Ismalia Gutierrez-Galang*
G. ISMALIA GUTIERREZ-GALANG
USDC-PR No. 218513
ismalia.gutz@gmail.com
ismalia@poalaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this same day I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification to the parties.

*/s/ G. Ismalia Gutierrez-Galang*